IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
CIVIL DIVISION

ASHLEY ROSS,

    Plaintiff,

v.                                         CASE NO.:

FLORIDA POLYTECHNIC UNIVERSITY
FOUNDATION, INC., d/b/a FLORIDA
POLYTECHNIC UNIVERSITY,

    Defendant.
_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, ASHLEY ROSS ("Plaintiff"), by and through undersigned counsel, hereby sues the Defendant, FLORIDA POLYTECHNIC UNIVERSITY FOUNDATION, INC., d/b/a FLORIDA POLYTECHNIC UNIVERITY ("Defendant"), and alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs, and equitable relief for violations of the Florida Civil Rights Act of 1992 ("FCRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* ("Title VII").

2. Venue lies within Polk County because a substantial part of the events giving rise to this claim arose in this county, where Defendant operates and is conducting business.

3. At all times material, Plaintiff is and was a resident of the State of Florida.

4. At all times material, Defendant is a corporation, which operates a Public University in Polk County, Florida.

5. Defendant employs more than 100 employees and is an "employer" within the

meaning of the FCRA and Title VII.

6. Plaintiff was an "employee" of Defendant within the meaning of the FCRA and Title VII.

7. On or about February 24, 2019 Plaintiff timely dual filed a written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

8. On or about September 26, 2019, the EEOC issued a "Right to Sue" letter, a copy of which is attached hereto as Exhibit A, and this action is being filed within 90 days of receipt of same. Plaintiff's charge has been pending with the FCHR for more than 180 days, and the FCHR has not issued a determination. This action is being filed within four years of Defendant's discriminatory actions.

9. Plaintiff has exhausted all of her administrative remedies and has met all conditions precedent to filing this lawsuit.

**GENERAL ALLEGATIONS**

10. Defendant engaged in sex discrimination and retaliation in violation of the FCRA and Title VII.

11. Plaintiff was hired by Defendant as a full-time Campus Recreation and Fitness Coordinator in or about August 2015, and later promoted to an Assistant Director of Development in March 2017.

12. Prior to Plaintiff's promotion, in or about October 2016, Plaintiff fell subject to sexual harassment by a supervisor, Dr. Steven Warner ("Dr. Warner"). Dr. Warner made inappropriate comments to Plaintiff, including one instance when he called her a "hooker." Plaintiff directly addressed the situation and her objections with Dr. Warner himself. Defendant's

Human Resources department conducted an investigation of Plaintiff's allegations and the matter was resolved shortly thereafter, when Dr. Warner apologized to Plaintiff for his inappropriate behavior. However, in or about February 2017, an outside entity underwent a second investigation regarding Plaintiff's allegations, which ultimately resulted in Dr. Warner's termination.

13. At the time of Plaintiff's promotion to an Assistant Director of Development, Defendant also hired Robert Kennedy ("Mr. Kennedy") for the same position. Mr. Kennedy and other similarly situated male employees were offered training for their new positions. However, Plaintiff, a female with the same job title as Mr. Kennedy, was not offered any training whatsoever for her new position.

14. Mr. Kennedy was aware of the sexual harassment incident between Plaintiff and Dr. Warner, and made comments to Plaintiff about her uncomfortable experience. Mr. Kennedy would tell Plaintiff that she "would not do that to him," and that he "was not going to get in trouble because of her."

15. Plaintiff was succeeding in her new position. So much so, that Defendant's even credited Plaintiff with having a "strong charismatic personality that opened many doors."

16. As an Assistant Development Director, one of Plaintiff's job functions was to solicit large charitable donations to the school. This long process begins with the cultivation of potential donors, building a relationship with the school and concluding the deal with an actual financial donation. Plaintiff consistently and effectively performed the initial two-thirds of this process. Plaintiff would have been successful in fully completing the process, had it not been for Defendant reassigning Plaintiff to work on new projects, steering her away from finalizing. Defendant interfered with Plaintiff finalizing the most crucial and final stage of each deal.

17. Defendant reassigned similarly situated male employees, including Mr. Kennedy, to finalize the donation transactions, thereby creating an institutional barrier that prevented Plaintiff from achieving the same fund-raising goals as her male counterparts. Still, Plaintiff continued to dedicate all her effort into obtaining potential donors to fund Defendant's foundation.

18. As part of her job, Plaintiff took charge and assertively attempted to improve the efficiency of fundraising efforts by finding new ways to clearly define geographic areas for which each member of the fundraising team would be responsible. She also questioned how donations were being tracked and cataloged. (Based on gender stereotypes, this resulted in) Defendant characterized Plaintiff's assertiveness and inquisition efforts as her being "hostile" toward her male colleague, Mr. Kennedy. Defendant engaged in gender stereotyping by framing Plaintiff's actions as "hostile" for a woman.

19. Unlike Plaintiff, no other male employee similarly situated was considered "hostile" while putting forth new ideas to improve the department. In fact, in January 2018 Mr. Kennedy was offered a promotion from Assistant Development Director to Development Director, which made him Plaintiff's direct boss and therefore higher up in the chain of command.

20. Contrary to Defendant's accusation that Plaintiff was "hostile," it was in fact Mr. Kennedy who portrayed hostility toward Plaintiff. So much so that within the first few weeks of Mr. Kennedy's promotion, Defendant conducted an anonymous survey about his managerial temperament.

21. Mr. Kennedy would often make comments to coworkers about Plaintiff, disparaging her character, her work, her demeanor, and her professionalism. He advised co-workers that he refused to work with her. Mr. Kennedy began a practice of ignoring Plaintiff's emails. Mr. Kennedy did not speak this way about non-female employees, nor did he treat non-

female employees this way. Plaintiff was then intentionally excluded from important departmental meetings, which adversely affected her ability to perform her job.

22. Plaintiff confronted Mr. Kennedy about his hostility, thereby objecting to gender discrimination and engaging in statutorily protected conduct. In response, Mr. Kennedy contacted his boss, Mr. Aspergren, to misrepresent the conversation he had with Plaintiff, blaming her and calling her hostile. Mr. Aspergren scheduled a meeting for himself, Mr. Kennedy and Plaintiff to discuss the concerns. Instead of remedying the situation, Mr. Aspergen informed Plaintiff that she "needed to behave and be professional," and that she "needed to stop emailing her complaints and pick up the phone instead, since emails are public record under the Sunshine Law." Despite engaging in worse conduct than Plaintiff, Mr. Kennedy was not reprimanded, and no similarly situated male employees were told that they "needed to behave."

23. After the meeting in which Plaintiff objected to gender discrimination, Defendant began retaliating against Plaintiff by assigning her multiple tasks to do over the weekend. Defendant sought to "punish" Plaintiff by providing her with tasks to be completed on her time off of work, without compensation for such. Plaintiff complained about this retaliatory conduct and indicated that it was inappropriate.

24. On or about March 5, 2018, soon after Plaintiff engaged in statutorily protected activity, Defendant sent Plaintiff a letter, signed by Mr. Kennedy, stating that her employment with Defendant has been terminated, effective April 4, 2018. The letter stated that the reason for her termination was a "business decision."

25. No similarly situated employees who were male were subjected to similar adverse employment actions.

26. The above-described conduct constitutes discrimination and retaliation in violation

5

of the FCRA and Title VII.

27. Plaintiff has suffered damages for lost wages, lost benefits, emotional distress, public humiliation and embarrassment, depression and other damages as a result of this unlawful conduct.

28. Defendant's unlawful actions were intentional, willful, malicious and/or done in callous disregard for Plaintiff's rights.

29. Plaintiff has been required to retain the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

30. Plaintiff requests a jury trial for all issues so triable.

## COUNT I
### Sex Discrimination in Violation of the FCRA

31. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 28 as though fully set forth herein.

32. Defendant's conduct as herein alleged violated the FCRA, which prohibits discrimination on the basis of sex.

33. The foregoing actions of Defendant constitute discrimination against Plaintiff based upon her sex/gender. Plaintiff was subjected to disparate treatment based on her sex/gender.

34. Similarly situated male employees were treated more favorably due to their sex.

35. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

36. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
### Sex Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2

37. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 28

as though fully set forth herein.

38.   Defendant's conduct as herein alleged violated Title VII, which prohibits discrimination on the basis of sex.

39.   Defendant committed multiple acts of sex discrimination against the Plaintiff to result in adverse employment actions.

40.   The foregoing actions of Defendant constitute discrimination against Plaintiff based upon her sex.

41.   Plaintiff was subjected to disparate treatment based on her sex.

42.   Similarly situated male employees were treated more favorably due to their sex.

43.   As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

44.   Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT III**
**Retaliation in Violation of the FCRA**

45.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 28 as though fully set forth herein.

46.   Defendant's conduct as herein alleged violated the FCRA, which prohibits retaliation because of statutorily-protected activity.

47.   Plaintiff engaged in statutorily-protected activity under the FCRA, including by complaining about and objecting to gender discrimination.

48.   The foregoing actions of Defendant constitute retaliation against Plaintiff because of her statutorily-protected activity.

49.   As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

50. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
### Retaliation in Violation of Title VII

51. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 28 as though fully set forth herein.

52. Defendant's conduct as herein alleged violated Title VII, which prohibits retaliation because of statutorily-protected activity.

53. Plaintiff engaged in statutorily-protected activity under the FCRA by rejecting and opposing the Defendant's discriminatory conduct.

54. The foregoing actions of Defendant constitute retaliation against Plaintiff because of her statutorily-protected activity.

55. As a proximate result of Defendant's discrimination actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

56. Plaintiff requests relief as described in the Prayer for Relief below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate the FCRA and Title VII;

2. Grant all injunctive relief necessary to bring Defendant into compliance with the FCRA and Title VII;

3. Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in amounts to be proven at trial;

4. Order Defendant to pay compensatory damages for Plaintiff's emotional pain and

suffering, in an amount to be proven at trial;

     5.     Order Defendant to pay exemplary and punitive damages;

     6.     Order Defendant to pay attorneys' fees and costs of the action;

     7.     Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

     8.     Grant any further relief that the Court deems just and proper.

Dated this 23rd day of December 2019.

> Respectfully submitted,
> **WHITTEL & MELTON, LLC**
> /s/ William J. Sheslow
> William J. Sheslow, Esq.
> Florida Bar No.: 92042
> Dorothy K. Hufnagel, Esq.
> Florida Bar No.: 16143
> 11020 Northcliffe Boulevard
> Spring Hill, Florida 34608
> Telephone: (352)683-2016
> Facsimile: (352) 600-7533
> will@theFLlawfirm.com
> dorothy@theFLlawfirm.com
> pls@theFLlawfirm.com
> jwalsh@theFLlawfirm.com
> bonnie@theFLlawfirm.com
> pleadings@theFLlawfirm.com
> *Attorneys for Plaintiff*